UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

ANNE P.,

               Plaintiff,

-v-

ANDREW SAUL
Commissioner of Social Security,

               Defendant.

---

1:19-CV-00711-MJR
DECISION AND ORDER

Pursuant to 28 U.S.C. §636(c), the parties consented to have a United States Magistrate Judge conduct all proceedings in this case. (Dkt. No. 20).

Plaintiff Anne P.[1] ("plaintiff") brings this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) seeking judicial review of the final decision of the Commissioner of Social Security ("Commissioner" or "defendant") denying her Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under the Social Security Act (the "Act"). Both parties have moved for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. For the following reasons, plaintiff's motion (Dkt. No. 11) is granted, defendant's motion (Dkt. No. 18) is denied and the matter is remanded to the Commissioner for further administrative proceedings consistent with this Decision and Order.

---

[1] In accordance with the District's November 18, 2020 Standing Order regarding the identification of non-government parties in social security opinions, plaintiff is identified solely by first name and last initial.

## BACKGROUND[2]

Plaintiff filed an application for DIB and SSI on September 23, 2015 alleging disability since April 1, 2011 due to depression, anxiety, bipolar disorder, OCD, and pneumothorax. (*See* Tr. 178-191, 230).[3] Plaintiff's disability benefits application was initially denied on January 22, 2016. (Tr. 16, 92-93). Plaintiff sought review of the determination, and a hearing was held before Administrative Law Judge ("ALJ") Maria Herrero-Jaarsma on March 1, 2018. (Tr. 41-79). ALJ Jaarsma heard testimony from plaintiff, who was represented by counsel, as well as from Kenneth Jones, an impartial vocational expert ("VE"). (*Id.*). On May 24, 2018, ALJ Jaarsma issued a decision that plaintiff was not disabled under the Act. (Tr. 13-31). Plaintiff timely sought review of the decision by the Appeals Council and her request was denied. (Tr. 1-6). The ALJ's May 24, 2018 denial of benefits then became the Commissioner's final determination, and the instant lawsuit followed.

Born on September 3, 1974, plaintiff was 36 years old on the alleged disability onset date and 43 years old on the date of the hearing. (Tr. 25, 178, 185). Plaintiff is able to communicate in English, has at least a high school education, and has previously worked as a secretary. (Tr. 378).

## DISCUSSION

I.   *Scope of Judicial Review*

The Court's review of the Commissioner's decision is deferential. Under the Act, the Commissioner's factual determinations "shall be conclusive" so long as they are

---

[2] The Court presumes the parties' familiarity with the plaintiff's medical history, which is summarized in the moving papers.
[3] References to "Tr." are to the administrative record in this case.

"supported by substantial evidence," 42 U.S.C. §405(g), that is, supported by "such relevant evidence as a reasonable mind might accept as adequate to support [the] conclusion," *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotation marks and citation omitted). "The substantial evidence test applies not only to findings on basic evidentiary facts, but also to inferences and conclusions drawn from the facts." *Smith v. Colvin*, 17 F. Supp. 3d 260, 264 (W.D.N.Y. 2014). "Where the Commissioner's decision rests on adequate findings supported by evidence having rational probative force," the Court may "not substitute [its] judgment for that of the Commissioner." *Veino v. Barnhart*, 312 F.3d 578, 586 (2d Cir. 2002). Thus, the Court's task is to ask "'whether the record, read as a whole, yields such evidence as would allow a reasonable mind to accept the conclusions reached' by the Commissioner." *Silvers v. Colvin*, 67 F. Supp. 3d 570, 574 (W.D.N.Y. 2014) (quoting *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982)).

Two related rules follow from the Act's standard of review. The first is that "[i]t is the function of the [Commissioner], not [the Court], to resolve evidentiary conflicts and to appraise the credibility of witnesses, including the claimant." *Carroll v. Sec'y of Health & Human Servs.*, 705 F.2d 638, 642 (2d Cir. 1983). The second rule is that "[g]enuine conflicts in the medical evidence are for the Commissioner to resolve." *Veino*, 312 F.3d at 588. While the applicable standard of review is deferential, this does not mean that the Commissioner's decision is presumptively correct. The Commissioner's decision is, as described above, subject to remand or reversal if the factual conclusions on which it is based are not supported by substantial evidence. Further, the Commissioner's factual conclusions must be applied to the correct legal standard. *Kohler v. Astrue*, 546 F.3d 260, 265 (2d Cir. 2008). Failure to apply the correct legal standard is reversible error. *Id.*

II.   *Standards for Determining "Disability" Under the Act*

A "disability" is an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). The Commissioner may find the claimant disabled "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work." *Id.* §423(d)(2)(A). The Commissioner must make these determinations based on "objective medical facts, diagnoses or medical opinions based on these facts, subjective evidence of pain or disability, and . . . [the claimant's] educational background, age, and work experience." *Dumas v. Schweiker*, 712 F.2d 1545, 1550 (2d Cir. 1983) (first alteration in original) (quoting *Miles v. Harris*, 645 F.2d 122, 124 (2d Cir. 1981)).

To guide the assessment of whether a claimant is disabled, the Commissioner has promulgated a "five-step sequential evaluation process." 20 C.F.R. §404.1520(a)(4). First, the Commissioner determines whether the claimant is "working" and whether that work "is substantial gainful activity." *Id.* §404.1520(b). If the claimant is engaged in substantial gainful activity, the claimant is "not disabled regardless of [his or her] medical condition or . . . age, education, and work experience." *Id.* Second, if the claimant is not engaged in substantial gainful activity, the Commissioner asks whether the claimant has

a "severe impairment." *Id.* §404.1520(c). To make this determination, the Commissioner asks whether the claimant has "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities." *Id.* As with the first step, if the claimant does not have a severe impairment, he or she is not disabled regardless of any other factors or considerations. *Id.* Third, if the claimant does have a severe impairment, the Commissioner asks two additional questions: first, whether that severe impairment meets the Act's duration requirement, and second, whether the severe impairment is either listed in Appendix 1 of the Commissioner's regulations or is "equal to" an impairment listed in Appendix 1. *Id.* §404.1520(d). If the claimant satisfies both requirements of step three, the Commissioner will find that he or she is disabled without regard to his or her age, education, and work experience. *Id.*

If the claimant does not have the severe impairment required by step three, the Commissioner's analysis proceeds to steps four and five. Before doing so, the Commissioner must "assess and make a finding about [the claimant's] residual functional capacity ["RFC"] based on all the relevant medical and other evidence" in the record. *Id.* §404.1520(e). RFC "is the most [the claimant] can still do despite [his or her] limitations." *Id.* §404.1545(a)(1). The Commissioner's assessment of the claimant's RFC is then applied at steps four and five. At step four, the Commissioner "compare[s] [the] residual functional capacity assessment . . . with the physical and mental demands of [the claimant's] past relevant work." *Id.* §404.1520(f). If, based on that comparison, the claimant is able to perform his or her past relevant work, the Commissioner will find that the claimant is not disabled within the meaning of the Act. *Id.* Finally, if the claimant cannot perform his or her past relevant work or does not have any past relevant work, then at the

fifth step the Commissioner considers whether, based on the claimant's RFC, age, education, and work experience, the claimant "can make an adjustment to other work." *Id.* §404.1520(g)(1). If the claimant can adjust to other work, he or she is not disabled. *Id.* If, however, the claimant cannot adjust to other work, he or she is disabled within the meaning of the Act. *Id.*

The burden through steps one through four described above rests on the claimant. If the claimant carries their burden through the first four steps, "the burden then shifts to the [Commissioner] to show there is other gainful work in the national economy which the claimant could perform." *Carroll*, 705 F.2d at 642.

III.   *The ALJ's Decision*

The ALJ found that plaintiff last met the insured status requirements of the Act on December 31, 2015. (Tr. 18). The ALJ then followed the required five-step analysis for evaluating plaintiff's claim. Under step one, the ALJ found that plaintiff did not engage in substantial gainful activity since the alleged onset date of April 1, 2011. (*Id.*). At step two, the ALJ found that plaintiff had the following severe impairments: (1) bipolar disorder type 1 with depression and mania; (2) general anxiety disorder with panic attacks; (3) personality disorder; and (4) adjustment disorder. (Tr. 19). At step three, the ALJ determined that plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments. (*Id.*). Before proceeding to step four, the ALJ assessed plaintiff's RFC as follows:

> [T]he [plaintiff] has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: she is able to follow and understand simple directions and instructions, perform simple tasks independently, and make simple work-related decisions. Work in a low stress environment meaning one with no supervisory responsibilities, no work at production rate pace and no fast-moving assembly line-type work. Work that involves frequent contact and

> interaction with supervisors and occasional contact and interaction with co-workers and the public. Can be around coworkers throughout the day, but no tandem job tasks requiring cooperation with coworkers.

(Tr. 21).

Proceeding to step four, the ALJ reviewed the vocational information and the testimony of VE Jones to conclude that plaintiff is unable to perform past relevant work given the limitations set forth in her residual functional capacity. (Tr. 25). The ALJ noted that if the plaintiff had the residual functional capacity to perform work at all exertional levels, a finding of "not disabled" would be directed. (Tr. 25-26). However, the ALJ assessed that plaintiff's ability to perform work at all exertional levels is compromised by various mental limitations. (*Id.*) Proceeding to step five, and after considering testimony from VE Jones in addition to plaintiff's age, education, work experience, and RFC, the ALJ found that there are other jobs that exist in significant numbers in the national economy that plaintiff could perform, such as marker, garment sorter, and laundry worker. (*Id.*). Accordingly, the ALJ found that plaintiff had not been under a disability within the meaning of the Act from April 1, 2011, the alleged onset date, through May 24, 2018, the date of the decision. (Tr. 26-27).

IV. *Plaintiff's Challenges*

Plaintiff argues that the ALJ failed to evaluate plaintiff's physical impairments, namely urinary urgency and frequency, at step two and beyond. For the following reasons, the Court finds that the ALJ should have considered the severity and limiting effect, if any, of plaintiff's urinary incontinence, urinary frequency and urgency, or other related impairment, and that such error was harmful.

At step two of the analysis, the ALJ must determine whether the claimant has a medically determinable impairment, or a combination of impairments, that is severe,

meaning that it limits his or her ability to do basic work activities, and meets the duration requirement. 20 C.F.R. §404.1520(a)(4)(ii) and (c); 416.920(a)(4)(ii) and (c). The Second Circuit cautions that the step two severity analysis is meant to be applied "only to screen out *de minimis* claims." *See Dixon v. Shalala*, 54 F.3d 1019, 1030 (2d Cir. 1995). "Where the ALJ has made errors at step two, courts in this Circuit have generally remanded for a renewed severity determination." *See Pierce v. Astrue*, 946 F. Supp. 2d 296, 310 (W.D.N.Y. 2013). Further, an RFC determination at step four must account for limitations imposed by both severe and non-severe impairments. *See* 20 C.F.R. § 404.154(a)(2); 416.945(a)(2). If the claimant has more than one impairment, the ALJ must account for the combined effect of all impairments on a claimant's ability to work, regardless of whether each impairment is severe." *See Thompson v. Astrue*, 416 Fed. Appx. 96, 97 (2d Cir. 2011) (summary order) (citing *Dixon v. Shalala*, 54 F.3d at 1031); *see also* 20 C.F.R. §§ 404.1523, 416.923 (requiring that ALJ must "consider the combined effect of all of [the claimant's] impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity.")

In *Taylor v. Astrue*, plaintiff challenged the ALJ's complete omission of discussion about a specific physical impairment. *See* 6:11-CV-588, 2012 U.S. Dist. LEXIS 57277 (N.D.N.Y. Apr. 24, 2012). The ALJ failed to mention Taylor's wrist impairment at all in discussing severity at step two and only briefly acknowledged the impairment in summarizing the medical evidence relative to Taylor's RFC. *See id.* at *5-6. Because of this, the Court explained that it was unable to meaningfully review the ALJ's determination and found it necessary for the case be remanded. *Id.*

Here, the ALJ assessed that plaintiff had only mental impairments and failed to discuss or even note any physical impairments, despite evidence of urologic disease or dysfunction. The Commissioner argues that plaintiff did not allege any genitourinary issues, and that she represented that her medically determinable impairments were all mental and that she had no other non-severe impairments. To the contrary, the medical evidence in the record before this Court demonstrates that plaintiff did suffer from stress-type urinary incontinence, overactive bladder, and urinary urgency and frequency which may have caused an impairment to her ability to work.[4] (Tr. 70, 240, 430-33, 446-49). Further, the holding in *Fontanez v. Colvin* directly contradicts the Commissioner's argument that these impairments did not need to be considered because they were not properly alleged by plaintiff. *See* 16-CV-01300, 2017 U.S. Dist. LEXIS 160048 (E.D.N.Y. Sept. 28, 2017). In that case, plaintiff contended that the ALJ erred by failing to address plaintiff's neck pain and the Commissioner countered that no error occurred because plaintiff only alleged depression, back injuries, asthma, and allergies on her SSI application. *Id.* at *46-47. The Court explained that, regardless of whether claimant listed a specific condition on her application, the regulations require the ALJ "to consider impairments a claimant alleges *or* those 'about which [the ALJ] receive[s] evidence.'" *Id.* at 49-50 (quoting 20 C.F.R. §404.1512(a)(1) (emphasis in original)). The ALJ did not acknowledge or discuss Fontanez's neck pain despite medical notes and opinions in the record regarding her chronic neck pain and muscle spasms. *Id.* at *50. The Court found that "such medical records suggest that neck pain was an ongoing condition that

---

[4] The record also shows that plaintiff suffered from pneumothorax and excessive axillary sweating, neither of which is discussed in the ALJ's decision. Plaintiff has not objected to the ALJ's handling of these conditions.

potentially limited Plaintiff's ability to function or work, and the ALJ plainly erred by failing to address the condition at step two or any subsequent steps." *Id.* at *50-51.

Here, although it is clear that plaintiff is most affected by her mental impairments, evidence of her urologic issues was plainly presented to the ALJ. Plaintiff did not list a urinary problem as a medical condition on her initial benefits application, but the Function Report from her application discloses "frequent urination" as a "problem with personal care." (Tr. 240). Further, the evidence before the ALJ included medical records from John M. Rutkowski, M.D., at WNY Urology Associates, and Carrie McPherson, PA, at Lifetime Health, related to urologic care. (Tr. 430-33, 446-49). PA McPherson's treatment notes from March 3, 2017 indicate that plaintiff reported bladder control problems, specifically "difficultly controlling urine" and "episodes of urge incontinence" occurring "over [the] last several [years]." (Tr. 446). She referred plaintiff to WNY Urology for evaluation. (Tr. 449). Dr. Rutkowski evaluated plaintiff on March 17, 2017 for "urinary urgency and frequency" and "stress-type urinary incontinence." (Tr. 432-33). Dr. Rutkowski subsequently performed a cystoscopy procedure which showed no bladder stones, tumors, or cystitis, "very slight trabeculation of the bladder," and "no evidence of loss of urine" after filling the bladder. (Tr. 430-31). The "preop" and "postop" diagnosis was listed as "urinary urgency and frequency." (*Id.*). Dr. Rutkowski's notes from that time show that a renal ultrasound was scheduled, urine culture was pending, and that plaintiff would "do a trial of [a] different anticholinergic [medication]." (*Id.*). During the administrative hearing, plaintiff's attorney listed only mental impairments and did not contend plaintiff had any non-severe impairments. (Tr. 46). However, when the ALJ asked if there was anything else that should be discussed, plaintiff responded: "[w]ell, there's other stupid things. You know,

everybody's got their health problems and stuff and you know, I have apparently over active sweat glands and I have an over active bladder so I'm always having to go to the bathroom or you know, basically peeing myself." (Tr. 70). Whether plaintiff was suggesting that this condition did not significantly impair her, or she was minimizing the condition due to embarrassment or another reason, is not for this Court to discern. What is certain is that there was ample evidence in the record that this condition existed, was ongoing, and potentially limited plaintiff's ability to function or work. Thus, it should have been considered by the ALJ. See *Fontanez*, at *49-51.

The Commissioner also points to evidence in the medical record indicating instances when plaintiff denied any genitourinary concerns or bladder problems, arguing that this show the impairment did not significantly limit plaintiff's functioning. (Tr. 35, 397, 415, 467-70, 472-75, 578, 592). It is the ALJ's duty to resolve instances of conflicting evidence such as this. See *Richardson v. Perales*, 402 U.S. at 399. Yet, there is no indication here that the ALJ recognized the presence of conflict evidence, nor is there an explanation for her resolution of it. See *Calzada v. Astrue*, 753 F. Supp. 2d 250, 268-69 (S.D.N.Y. 2010) ("While the ALJ need not resolve every conflict in the record, 'the crucial factors in any determination must be set forth with sufficient specificity to enable [the reviewing court] to decide whether the determination is supported by substantial evidence.'"(citations omitted)); see also *Kane v. Astrue,* 942 F. Supp. 2d 301, 305 (E.D.N.Y. 2013) ("[A]n ALJ's failure to acknowledge relevant evidence or to explain its implicit rejection is plain error."). Thus, this Court cannot determine whether a rejection of plaintiff's urinary issues as a severe impairment would be supported by substantial evidence.

Here, even if it can be found that plaintiff's urinary problems are not severe in nature, the ALJ must consider the limiting effect, if any, of urinary-related physical impairments in determining plaintiff's RFC. See Taiano v. Astrue, 09-CV-2849, 2010 U.S. Dist. LEXIS 105477, at *11-12 (E.D.N.Y. Oct. 1, 2010) (finding evaluation of the limiting effects of symptoms such as urinary frequency, necessary to RFC determination); see also Lowe v. Colvin, 6:15-CV-06077, 2016 U.S. Dist. LEXIS 19181, at *23 (W.D.N.Y. Feb. 17, 2016) (requiring specific findings regarding frequency of bathroom breaks). The failure to do so constitutes harmful error. See Parker-Grose v. Astrue, 462 Fed. Appx. 16, 18 (2d Cir. 2012) (summary order) ("[E]ven if this Court concluded that substantial evidence supports the ALJ's finding that Parker-Grose's mental impairment was nonsevere, it would still be necessary to remand this case for further consideration because the ALJ failed to account [sic] Parker-Grose's mental limitations when determining her RFC."); Fontanez, at *51 (explaining that because the ALJ did not address plaintiff's neck pain at any subsequent step, the failure to address the medical record pertaining to this condition at step two was not harmless error). To this point, plaintiff submits that this condition requires her to take unscheduled bathroom breaks twice an hour. Plaintiff argues that this interruption, combined with the extensive mental limitations assessed at step four, would result in her being off task more than allowable throughout the workday. This contention is one for the Commissioner to evaluate after proper consideration of this impairment.

Lastly, the Commissioner argues that plaintiff's urologic issues were not "medically determinable impairments," because they are not established by objective medical evidence from an acceptable medical source. See 20 C.F.R. §404.1521 ("a physical or mental impairment must be established by objective medical evidence from an acceptable

medical source"). The Commissioner objects to any diagnosis provided by Carrie McPherson on the basis that she is a physician assistant who is not able to establish the presence of a medically determinable impairment. See 20 C.F.R. §404.1502(a)(7) (excluding physician assistants as "acceptable medical sources" for claims filed prior to March 27, 2017). This argument is of no consequence because Dr. Rutkowski, who is an acceptable medical source, diagnosed plaintiff with "urinary urgency and frequency." (Tr. 430). The Commissioner's next assertion that urinary urgency and frequency are symptoms of an impairment, not an impairment in and of itself, only lends support to the Court's finding that the ALJ should have explained her consideration of this evidence and her resolution of any conflict between the objective medical evidence, diagnoses, and symptoms. The Commissioner's own statement in its memorandum that "it would have been preferable for the ALJ to have gone through the above analysis in her decision" is telling. (Dkt. No. 18-1, pg. 11). A *post hoc* explanation for why this impairment was seemingly ignored by the ALJ cannot be accepted. See *McFarland-Deida v. Berryhill*, 17-CV-6534, 2018 U.S. Dist. LEXIS 55831, at *10 (W.D.N.Y. Apr. 1, 2018) ("The Commissioner may not substitute her own rationale when the ALJ failed to provide one." (citing *Snell v. Apfel*, 177 F.3d 128, 134 (2d Cir. 1999)).

On remand, the ALJ must examine whether plaintiff's urinary urgency and frequency, or any related urologic diagnosis, is a medically determinable impairment, whether it is severe or non-severe in nature, and the limiting effects it may have on her RFC assessment.

## CONCLUSION

For the foregoing reasons, plaintiff's motion for judgment on the pleadings (Dkt. No. 11) is granted, defendant Commissioner of Social Security's motion for judgment on the pleadings (Dkt. No. 18) is denied, and the matter is remanded to the Commissioner for further administrative proceedings consistent with this Decision and Order.

The Clerk of Court shall take all steps necessary to close this case.

**SO ORDERED.**

Dated:   February 22, 2021
         Buffalo, New York

                                              _____
                                              MICHAEL J. ROEMER
                                              United States Magistrate Judge